## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ROSALYN RAEL,**

      **Plaintiff,**

  **v.**                                                                              **No. CIV-02-168 JP/LFG**

**TAOS GROUP HOME, INC., d/b/a CASA
DE CORAZON, and MARGARET COHENOUR,
individually and as Executive Director of Taos Group
Home, Inc.,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On October 28, 2002, Defendants filed a Motion for Summary Judgment (Doc. No. 42).

Having reviewed the parties' arguments and the evidence, this Court will grant the motion, in

part.

**I.**     **Background**

The following facts are those in the record which are most favorable to the Plaintiff. See

EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (10th Cir. 2000). Casa de

Corazon is an agency that provides various kinds of treatment and foster care services for abused

children. Plaintiff, Rosalyn Rael, was employed by Defendant Taos Group Home, d/b/a Casa de

Corazon, as the Clinical Director of the Treatment Foster Care Program ("TFCP") on or around

November 30, 1999. The purpose of the TFCP is to find foster care parents for children who are

receiving any of the services offered by Casa de Corazon. The Clinical Director of the TFCP

must have a LISW or a Ph.D. in social work.

Around February 2001, during her employment as the Clinical Director, Plaintiff received a report that a young male in the TFCP was accused of molesting another child. Plaintiff reported this alleged instance of sexual abuse to Presbyterian Medical Services, the New Mexico Child Abuse Hotline, and Jay Goodman, the company attorney for Taos Group Home. Prior to Plaintiff's reporting this alleged incident of sexual abuse, Plaintiff had documented in the young male's file that Jay Goodman and the entire treatment team at Taos Group Home had recommended against his placement in the foster care home. The treatment team was concerned about placing him in the foster home because he had been sexually abusing other children, and the team did not want him to have the opportunity to molest another child. Despite these concerns, Defendant Margaret Cohenour, the Executive Director of Casa de Corazon, overrode the team's recommendation and accepted the young male for placement. Defendant Cohenour became angry with Plaintiff for reporting the alleged sexual abuse without clearing it first with Defendant Cohenour.

On March 27 - 29, 2001, the State of New Mexico Children, Youth and Families Department ("CYFD") conducted an audit of Casa de Corazon to ensure the program's compliance with CYFD's certification standards. The auditors reviewed the files of five children being served by the TFCP at that time. The audit resulted in Casa de Corazon obtaining only a "partial compliance" grade, according to CYFD standards.

One of the deficiencies reported in the audit was that the Clinical Director, at that time Plaintiff, did not possess professional licensed status. The CYFD standards require the Clinical Director of the TFCP to have a Ph.D. and to provide proof of it. The audit stated that the auditor was informed that Plaintiff did possess a Ph.D, but that documentation of it was not provided. At

the time of the audit, Plaintiff had the requisite Ph.D. in social work; however, Plaintiff was away on vacation while the audit occurred and was not able to provide the auditors with documentation of her Ph.D.

The CYFD audit also reported the following additional deficiencies in the TFCP:  no match assessments were found in the client records for four out of five clients;[1] for one of the five clients, a second placement occurred for which no match assessment was completed; numerous other documents did not meet CYFD licensing and certification standards; and Plaintiff recorded in one child's file non-clinically based information in regard to a dispute among team members about the propriety of this child's placement.  The CYFD audit indicated that Plaintiff documented in the child's file that the executive director imposed a treatment decision without the agreement of other members of the team.  The audit stated that the difference of opinion "was documented in an inflammatory manner leaving concerns about the resolution of the potential safety issues for the child."  Defts.' Br. in Supp. of Mot. for Summary Judgment, Ex. A at 4. Moreover, the CYFD audit concluded that the documentation was "not written in a clinically-based manner" and that the resolution of these issues had not been documented.  Id.

On April 2, 2001, Defendant Cohenour sent Plaintiff a letter advising Plaintiff that she was being placed on administrative leave pending the Board meeting set for April 9, 2001, as a result of the deficiencies in the TFCP, which were revealed by the CYFD audit.  Additionally, the letter stated that the Board was aware of the problems revealed by the CYFD audit and would discuss

---

[1]A match assessment documents an interview of the child and the potential foster care parents to see if there is a suitable match.  CYFD requires match assessments to be completed within seventy-two hours of a potential placement.  These match assessments were performed by Plaintiff or a treatment coordinator, at that time, Christine Atias.

with Defendant Cohenour what decisions needed to be made at the April 9, 2001 Board meeting to address the problems.  Prior to this suspension, Plaintiff had never been subject to any disciplinary measures.  Subsequently, on April 12, 2001, Defendants sent Plaintiff a termination letter, signed by Wanda Quintana, the Board President, and Defendant Cohenour, which stated, "We have made the determination that you will be terminated, effective immediately."  Pl.'s Memo. in Opposition to Defts.' Mot. for Summary Judgment, Ex. 14.

After filing charges of employment discrimination with the New Mexico Human Rights Division, Plaintiff sued Taos Group Home, Inc., and Margaret Cohenour for various claims arising from Plaintiff's termination.  On December 19, 2002, this Court entered an Order dismissing without prejudice Plaintiff's discrimination claim under the New Mexico Human Rights Act and dismissing with prejudice Plaintiff's intentional infliction of emotional distress and civil conspiracy claims (Doc. No. 50).  Plaintiff's remaining causes of action, all of which are the subject of Defendants' Motion for Summary Judgment, are claims for the following:  race discrimination in violation of Title VII and 42 U.S.C. § 1981, wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, and defamation.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When applying this standard, the Court examines the record evidence and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward

with evidence showing that there is a genuine issue of material fact.  Bacchus Indus., Inc. v. Arvin

Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The non-moving party may not avoid summary

judgment by resting upon the mere allegations or denials of his or her pleadings.  Id.  To

withstand a motion for summary judgment, the non-movant must make specific reference to

evidence in the record.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995);

D.N.M. LR-Civ. 56.1(b) (placing similar burden on both parties).  Unsubstantiated allegations, no

matter how true they might be, cannot be considered.  Gross, 53 F.3d at 1546.

III.     **Discussion**

    A.        **Discrimination Claims**

A plaintiff alleging racial discrimination may prove intentional discrimination through

either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant

showing a discriminatory motivation) or indirect evidence of discrimination.  Kendrick v. Penske

Transportation Services, Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).  In this case, Plaintiff admits

in her response to Defendants' Motion for Summary Judgment that she lacks direct evidence of

racial discrimination; thus, Plaintiff must rely on indirect evidence of discrimination.

In analyzing circumstantial evidence of race discrimination under either Title VII or 42

U.S.C. § 1981, courts apply the burden-shifting approach set forth in McDonnell Douglas Corp.

v. Green, 411 U.S. 792, 802-04 (1973).  See Kendrick, 220 F.3d at 1225-26 (stating that the

McDonnell Douglas analytical framework applies to both Title VII and section 1981 claims).

Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of

discrimination.  McDonnell Douglas, 411 U.S. at 802-04.  If Plaintiff establishes a prima facie

case, then the burden shifts to the employer to demonstrate a legitimate nondiscriminatory reason

for its action.  If the employer offers a legitimate nondiscriminatory reason, the burden shifts back

to Plaintiff to show that the employer's reason is mere pretext and unworthy of belief.  McDonnell

Douglas, 411 U.S. at 802-04; Kendrick, 220 F.3d at 1226.

          1.     **Prima Facie Case**

       In order to make a prima facie case of racial discrimination, Plaintiff must show (1) that

she is a member of a protected class; (2) she was qualified for her job; (3) despite her

qualifications, she was discharged; and (4) the job was not eliminated after her discharge.  See

Kendrick, 220 F.3d at 1229; Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999).  In this

case, Defendants do not dispute that Plaintiff, as a Hispanic, is a member of a protected class, that

Plaintiff was terminated, and that the job was not eliminated after Plaintiff's termination.

Defendants contend, however, that Plaintiff was not qualified for her job at the time of her

termination.  Defendants assert that Plaintiff was terminated for deficiencies in the performance of

her job duties, which is evidence that Plaintiff was not qualified for her position.

       One of the requirements for the position of Clinical Director of the TFCP, as specified by

CYFD certification standard 28.3.10, is that the director possess a Ph.D.  See Defts.' Br. in Supp.

of Mot. for Summary Judgment, Ex. A at 2.  Although Plaintiff was not present at the CYFD

audit, and thus, not able to present the CYFD auditors with the documentation of her Ph.D., the

evidence shows that Plaintiff, during her employment and at the time of her termination,

possessed the requisite Ph.D. needed for her job as Clinical Director.  Moreover, the fact that

Defendants hired Plaintiff for the job as Clinical Director, and that she remained in that position

for approximately one and a half years, supports Plaintiff's argument that she possessed the objective qualifications required for her job as Clinical Director.

Defendants assert that Plaintiff was not qualified for her position as Clinical Director based on evidence of deficiencies in Plaintiff's job performance.  This Court determines, however, that Defendants' argument is better suited for the pretext stage of the McDonnell Douglas analysis and should not be used to short-circuit Plaintiff's prima facie case.  See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d at 1193 ("When an employee's failure to meet objective employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima face case."); Burrus v. United Tel. Co. of Kansas, 683 F.2d 339, 342 (10th Cir. 1982) (determining that defendant was not allowed to rely on subjective qualifications to defeat plaintiff's prima facie case because it would deny the plaintiff the opportunity to demonstrate that those subjective criteria were a means to effect a discriminatory action); Barnett v. Boeing Co., 173 F.Supp.2d 1125, 1131 (D. Kan. 2001) (finding that plaintiff made a prima facie showing of qualification to be an inspector where he demonstrated that he possessed the requisite blueprint reading and mechanical skills, despite the defendant's claims that plaintiff was not qualified due to excessive absenteeism).  Therefore, because Plaintiff has shown that she was objectively qualified for the position of Clinical Director, Plaintiff has established a prima facie case of discrimination.

2.      **Legitimate Nondiscriminatory Reason**

Once Plaintiff established her prima facie case, Defendants had to give a facially nondiscriminatory reason for terminating Plaintiff.  See English v. Colorado Department of Corrections, 248 F.3d 1002, 1009 (10th Cir. 2001).  Defendants assert that Plaintiff was terminated for various deficiencies in her work performance:  insubordination, poor program management, and lack of clinical objectivity.  Defendants contend that Plaintiff had a history of refusing to follow directives and requests from Defendant Cohenour.  Furthermore, Defendants assert that Plaintiff's deficient work performance was revealed by the CYFD audit, which gave Casa de Corazon only a "partial compliance" grade.  Defendants contend that the CYFD auditors noted the following deficiencies in Plaintiff's performance:  (1) no match assessments were found in the client records of four out of the five clients; (2) for one of the clients, a second placement occurred for which no match assessment was completed; (3) there were numerous other documentary deficiencies; and (4) in the record of one client, Plaintiff recorded non-clinically based information regarding a dispute among team members about the propriety of the client's placement, which allegedly placed the program in a potentially liable situation.  These purported deficiencies in Plaintiff's job performance are legitimate nondiscriminatory reasons for terminating Plaintiff.

3.      **Pretext**

Plaintiff may show pretext either directly by showing the court that a discriminatory reason more likely motivated the employer or indirectly by demonstrating that the employer's proffered explanation is unworthy of credence.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 922

(10th Cir. 2001).  Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 772 (10th Cir. 1988).  Among the variety of methods, a plaintiff typically demonstrates pretext in one of three ways:  (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant did not act according to a written company policy dictating the action to be taken by defendant; or (3) with evidence that the defendant acted contrary to an unwritten company policy or practice when making the adverse employment decision.  <u>Kendrick</u>, 220 F.3d at 1230.  A plaintiff may show that the defendant acted contrary to an unwritten company policy or practice by providing evidence that she was treated differently from other similarly situated employees who violated workplace rules of comparable seriousness.  <u>Id.</u>

Plaintiff makes four arguments in support of her claim that Defendants' justifications for Plaintiff's termination were pretextual.  First, Plaintiff argues that Defendants' reasons for Plaintiff's termination were false.  Second, Plaintiff claims that Defendant Cohenour's use of the term "Mexican Mafia" on two occasions demonstrates the generally pretextual nature of Defendants' reasons for terminating Plaintiff.  Third, Plaintiff asserts that similarly-situated non-Hispanic employees were treated differently.  Finally, Plaintiff contends that the fact that Plaintiff has been replaced by only white females and that the majority of employees hired by Defendant Cohenour have been white is sufficient evidence of purposeful discrimination for her claim to survive summary judgment.

a.    **False justification for termination**

Plaintiff contends that Defendants had no legitimate reasons to terminate Plaintiff. Plaintiff claims that she was an excellent employee who had performed satisfactory work in previous audits.  Plaintiff maintains that the defects in the March 2001 audit were easily correctable paperwork deficiencies, which did not rise to a sufficiently egregious level to warrant Plaintiff's termination.  Although it is undisputed that the TFCP received passing grades in previous audits in which Plaintiff was involved and that Plaintiff, prior to the April 2, 2002 suspension, had never been subject to disciplinary measures, it is also undisputed that the March 2001 CYFD audit found numerous paperwork deficiencies that were Plaintiff's responsibility. Moreover, the audit revealed that Plaintiff had placed inappropriate remarks in a child's file about a dispute among team members concerning the child's placement.  While these paperwork deficiencies may have been correctable, the evidence is undisputed that the sum of these deficiencies resulted in only a "partial compliance" grade by CYFD.  The fact that the CYFD audit determined that the TFCP was only in partial compliance with CYFD standards belies Plaintiff's argument that these paperwork deficiencies were minor and that the deficiencies did not reflect poorly on Plaintiff's job performance.  It is the supervisor's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of her own relative performance. Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1209 (10th Cir. 1999).  The record shows that Defendants were made aware of the deficiencies in Plaintiff's work performance by the March 2001 CYFD audit.  Plaintiff has not shown any evidence that the deficiencies in the March 2001 audit were in any way fabricated or exaggerated by Defendants.  Therefore, this

Court concludes that Plaintiff's assertion that she performed satisfactory work for prior audits is not sufficient to establish that Defendants' reasons for terminating Plaintiff were pretextual.

b.      **Racial remarks**

Plaintiff also argues that Defendant Cohenour's use of the term "Mexican Mafia" on two occasions is evidence of pretext.  Although such comments may be circumstantial evidence of discrimination, Plaintiff must still show a nexus between the statements and Defendants' decision to terminate Plaintiff.  <u>Shorter</u>, 188 F.3d at 1209-10.  The fact that the comments were made by Plaintiff's supervisor does not automatically establish the requisite nexus.  <u>Id.</u> at 1210.  Isolated or ambiguous remarks are insufficient to create a jury issue.  <u>Stone v. Autoliv ASP, Inc.</u>, 210 F.3d 1132, 1140 (10th Cir. 2000); <u>Cone v. Longmont United Hospital Ass'n</u>, 14 F.3d 526, 531 (10th Cir. 1994).

In this case, Defendant Cohenour used the term "Mexican Mafia" in reference to Plaintiff and two of Plaintiff's co-workers, Gilbert Mondragon and Maria Vigil.  Plaintiff admits that Defendant Cohenour's use of the term "Mexican Mafia" did not refer to Plaintiff's termination. Although Defendant Cohenour allegedly directed the remarks to Plaintiff, there is nothing in the statements to show a nexus between the statements and Defendants' decision to terminate Plaintiff.  Therefore, these isolated comments are insufficient evidence to establish that Defendants' reasons for terminating Plaintiff were pretextual.  <u>See</u> <u>Stone</u>, 210 F.3d at 1140 (holding that supervisor's remark, made while contemplating a reduction in force, that "at [employee's] age it would be difficult to train for another position" was a stray remark and insufficient to create a jury issue in an age discrimination case); <u>Shorter</u>, 188 F.3d at 1210 (finding that plaintiff's supervisor's comments to plaintiff regarding black men's sex organs, plaintiff

11

talking like other people of her race, and plaintiff being on the defensive just because she was black were insufficient to show a nexus to the supervisor's decision to terminate plaintiff); <u>Cone</u>, 14 F.3d at 531 (determining that statements made by the chief executive officer at the hospital in which he said that the hospital "need[s] some new young blood" and that "long-term employees have a diminishing return" were stray remarks that were insufficient to support a case of age discrimination); <u>Hong v. Children's Memorial Hosp.</u>, 993 F.2d 1257, 1265-66 (7th Cir. 1993) (concluding that supervisor's occasional remarks that the Korean-American employee should "learn to speak English" were insufficient to show discrimination in a Title VII case).

c.   <strong>Similarly situated employees</strong>

As additional evidence of pretext, Plaintiff contends that similarly situated non-Hispanic employees were treated differently. The burden is on the plaintiff to demonstrate that other employees, who were treated differently, were similarly situated. <u>See</u> <u>Sorensen v. City of Aurora</u>, 984 F.2d 349, 353 (10th Cir. 1993); <u>Robinette v. National Credit Services, Corp.</u>, 182 F.Supp.2d 1055, 1061 (D. Kan. 2001). Plaintiff here is unable to meet that burden.

Plaintiff first points to Christine Atias as a similarly situated non-Hispanic employee who was treated differently than Plaintiff. Plaintiff asserts that Ms. Atias, Plaintiff's non-Hispanic assistant, shared responsibility for the TFCP, yet Ms. Atias was not terminated following the results of the CYFD audit. Plaintiff, however, has not demonstrated that Ms. Atias is a similarly situated employee. Plaintiff admits that Ms. Atias was Plaintiff's assistant in the TFCP, that Ms. Atias was a part-time employee, and that Ms. Atias was under Plaintiff's supervision. Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment at 3. In contrast, as the Clinical Director of the TFCP, Plaintiff had more responsibility for the program than Ms. Atias.

12

Moreover, Plaintiff, not Ms. Atias, recorded non-clinically based information in a child's file that the CYFD auditors determined was documented in an "inflammatory manner." See Defts.' Br. in Supp. of Mot. for Summary Judgment, Ex. A at 4. Based upon this record, this Court determines that Ms. Atias is not similarly situated to Plaintiff. See Sorensen, 984 F.2d at 353 (holding that female and male fire dispatchers were not similarly situated employees because female admitted that she had primary responsibility for a call in regard to which she committed several serious errors).

Plaintiff next argues that Defendant Cohenour is a similarly-situated non-Hispanic employee who was treated differently from Plaintiff. Plaintiff contends that, while Defendant Cohenour was the Clinical Director, a CYFD audit was conducted on April 4 - 7, 2000, which required Defendant Cohenour to perform an "action plan" to correct deficiencies found in the Residential Treatment Services program. See Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 17 at 3. Plaintiff asserts that the failure of Taos Group Home, Inc., to terminate Defendant Cohenour following the April 2000 audit is evidence of discrimination.

There are, however, important differences between the April 2000 and March 2001 audits. First, the audit conducted when Defendant Cohenour was Clinical Director concerned Residential Treatment Services, not Treatment Foster Care Services. See Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 17 at 1. Second, the deficiencies noted in the two audits pertained to different CYFD standards. Compare Defts.' Br. in Supp. of Mot. for Summary Judgment, Ex. A at 2-4, with Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 17 at 2-3. Third, and most important, Defendant Cohenour's audit, despite finding deficiencies regarding quality improvement needs in the area of documentation, still recommended

that Taos Group Home receive full certification to provide the Residential Treatment Services. Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 17 at 3.  In contrast, the March 2001 audit of the TFCP, during which time Plaintiff was Clinical Director, resulted in only a "partial compliance" grade and temporary certification.  Defts.' Br. in Supp. of Mot. for Summary Judgment, Ex. A at 5.

This Court is unable to ignore the important difference between a "full certification" recommendation and a "partial compliance" grade.  See Kendrick, 220 F.3d at 1232 (holding that, in order to find evidence that similarly situated employees were treated differently, the employees must have violated work rules of comparable seriousness).  That Taos Group Home did not terminate Defendant Cohenour over an audit fully certifying the Residential Treatment Services program, while Plaintiff was terminated over an audit that did not fully certify the TFCP, is hardly evidence of disparate treatment.   Rather, Plaintiff's termination appears to be a business decision within Defendants' sound discretion.  See Hong, 993 F.2d at 1262-63 ("As a rule, this court will 'not sit as a super-personnel department that reexamines an entity's business decisions in cases where discrimination is alleged.  [The employer] is in a better position than this court to assess the relative qualifications of its employees and to determine when an employee's performance is so deficient as to potentially compromise the level of care to which patients are entitled.") (internal citations omitted).  Given the significant differences between the April 2000 and March 2001 audits, this Court concludes that Defendant Cohenour was not similarly situated to Plaintiff.

Additionally, Plaintiff argues that Amy Williams, a non-Hispanic employee, was similarly situated to Plaintiff.  There is little evidence in the record indicating how Ms. Williams was similarly situated to Plaintiff.  At the pretrial conference held in this case on December 18, 2002,

Plaintiff's counsel pointed to the affidavit of Patricia Gallegos, a former co-worker of Plaintiff at Casa de Corazon, to show how Ms. Williams was similarly situated to Plaintiff.  See Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 10 at 1-2.  Ms. Gallegos asserts in her affidavit that Ms. Williams worked as the Clinical Director of the Residential Treatment Center, despite not having the necessary licensing requirements.  Id. at 2.  Ms. Williams worked under Defendant Cohenour's license during this time.  Id.  This evidence is insufficient to show disparate treatment.  Plaintiff has not provided any evidence that Ms. Williams, while acting as the Clinical Director, was responsible for a CYFD audit that resulted in only a "partial compliance" grade. Nor has Plaintiff demonstrated that there is any evidence in the record indicating that Ms. Williams' work performance was deficient or substandard.  Absent such a showing, this Court is unable to conclude that Ms. Williams was similarly situated to Plaintiff.  See Robinette, 182 F.Supp.2d at 1061 (finding that female plaintiff was not similarly situated to a male manager, in part, because the plaintiff did not show that the male manager engaged in the same misconduct that served as the basis for the plaintiff's adverse employment action).

d.   **Replacement by and hiring of white employees**

Finally, Plaintiff contends, without discussion, that the fact that Plaintiff was replaced by only white females and that a majority of the employees hired by Defendant Cohenour have been white is evidence of pretext.  Plaintiff points to the affidavit of Ms. Gallegos, who states that after Plaintiff was terminated, six white persons were hired to replace Plaintiff.  See Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 10 at 1.  This evidence, however, is insufficient to show discrimination based on race because Plaintiff has not demonstrated how

Plaintiff's replacements were similarly situated to her.  See Cone, 14 F.3d at 532 (requiring statistical samples to compare like individuals).

Moreover, Plaintiff cites to Defendant Cohenour's affidavit to support Plaintiff's claim of discrimination.  However, the portion of Defendant Cohenour's affidavit cited by Plaintiff actually contradicts Plaintiff's claim of race discrimination.  See Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex. 7 at 19, ll. 4-10.  In her deposition, Defendant Cohenour refused to agree with the statement that the hiring of new employees was basically of white persons.  Id.  Defendant Cohenour stated that the Defendants not only encouraged minorities to apply for positions, but gave them priority.  Id.  Defendant Cohenour explained that the reason Defendants have not hired many minorities is because Defendants "have not had real success with recruiting Hispanic and Native American employees."  Id.  This portion of Defendant Cohenour's deposition illustrates why this Court is unable to infer discrimination based on race from Plaintiff's evidence: Plaintiff's evidence does not indicate how many minority applicants applied for positions at Casa de Corazon, how many minority applicants were qualified for the positions for which they applied, and how many total white applicants were hired at Casa de Corazon in place of qualified minority applicants.

Although this Court must, at this stage of the proceedings, view the evidence in the light most favorable to Plaintiff, it will not engage in the kind of speculation required to overcome the significant factual gaps in the record.  Plaintiff simply has not presented this Court with sufficient evidence to show that similarly situated employees were treated differently in order to support an inference of race discrimination.  Therefore, summary judgment for Defendants is appropriate on Plaintiff's claims of race discrimination under Title VII and 42 U.S.C. § 1981.

16

B.      **Wrongful Termination**

The tort of retaliatory discharge is recognized by New Mexico courts as a narrow exception to the at-will employment rule.  Shovelin v. Central New Mexico Electric Coop., Inc., 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993).  For an employee to recover on a retaliatory discharge claim, the employee must show that she was discharged because she performed an act that public policy has authorized or would encourage or because she refused to do something required of her by her employer that public policy would condemn.  Id. at 303, 850 P.2d at 1006 (quoting Chavez v. Manville Products Corp., 108 N.M. 643, 647, 777 P.2d 371, 375 (1989)). The employee must also demonstrate a causal connection between her actions and the retaliatory discharge by the employer.  Id.  "The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'"  Id.

Plaintiff's first theory underlying her retaliation claim is that she was wrongfully terminated on the basis of her race.  However, if Plaintiff were terminated based on her race, her retaliatory discharge claim is indistinguishable from her claims under the New Mexico Human Rights Act, Title VII, and 42 U.S.C. § 1981.  This district has refused to recognize a retaliatory discharge claim where the legislation recognizing the public policy also establishes a remedy. Parker v. John Q. Hammons Hotels, Inc., 914 F.Supp. 467, 472 (D.N.M. 1994); Salazar v. Furr's, Inc., 629 F.Supp. 1403, 1408 (D.N.M. 1986) ("Where a remedy other than [the retaliatory discharge] tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action.").

In <u>Salazar</u>, the plaintiff brought both a Title VII claim and a retaliatory discharge claim based, in part, on sex discrimination.  <u>Salazar</u>, 629 F.Supp. at 1408.  The court held that the wrongful discharge claim would not lie because the plaintiff could be vindicated under the federal statute.  <u>Id.</u> at 1409.  The court stated, "[T]he New Mexico courts would not extend the tort of wrongful discharge to a situation which fits so neatly into the Title VII mold."  <u>Id.</u>  The court thus dismissed the plaintiff's wrongful discharge claim that was premised on a finding that she was fired based on her sex.  <u>Id.</u>

This Court similarly will not extend the tort of retaliatory discharge to situations in which the New Mexico courts have not indicated that it should apply.  Plaintiff's claim for wrongful termination based on her race will, therefore, be dismissed.

Plaintiff's alternate theory of retaliation is that she was wrongfully terminated for reporting an alleged instance of sexual abuse by a Treatment Foster Care client to Presbyterian Medical Center, the New Mexico Child Abuse Hotline, and Jay Goodman, the company attorney for Taos Group Home.  Prior to Plaintiff's reporting this alleged incident of sexual abuse, Plaintiff had documented in this child's file that Jay Goodman and the entire treatment team had recommended against placement of this child in the foster care home.  Pl.'s Memo. in Opposition to Defts.' Mot. For Summary Judgment, Ex.3 at 4-5.  Plaintiff asserts that the team was concerned about placing this child in the foster home because the child had been sexually abusing other children.  <u>Id.</u> at 5.  The team recommended against accepting this child in a foster home because the child would have the opportunity to molest other children.  <u>Id.</u>  Plaintiff states that Defendant Cohenour overrode the team's recommendation and accepted the child for placement.  <u>Id.</u>

18

Plaintiff asserts that around February 2001 she received a report that the child in question was accused of molesting another child.  Id.  Plaintiff contends that, in response to this report, Plaintiff followed Casa de Corazon procedures in notifying the appropriate agencies about the abuse.  Id. at 5-6.  Plaintiff states that when she told Defendant Cohenour that she had reported the instance of sexual abuse to the New Mexico Child Abuse Hotline, Defendant Cohenour was angry with Plaintiff for reporting the alleged abuse without first clearing it with Defendant Cohenour.  Defts.' Br. in Supp. of Mot. for Summary Judgment, Ex. E at 144:13 - 145:1; 147:6 - 148:4.

This Court determines that New Mexico recognizes an express public policy that encourages the reporting of alleged instances of child sexual abuse.  NMSA Section 32A-4-3 provides:

> "Every person, including but not limited to a . . . social worker acting in an official capacity who knows or has a reasonable suspicion that a child is an abused or a neglected child shall report the matter immediately to:  (1) a local law enforcement agency; (2) the [CYFD] department office in the county where the child resides . . . ."

As Plaintiff noted in her deposition, when the New Mexico Child Abuse Hotline receives a report of sexual abuse, the Child Abuse Hotline notifies the local child protective services unit, which investigates the report.  Defts.' Br. in Supp. of Mot. for Summary Judgment, Ex. E at 145:2-17. By reporting the alleged incident of child abuse to the New Mexico Child Abuse Hotline and to Presbyterian Medical Center, Plaintiff was acting in a way that New Mexico public policy would encourage.  See NMSA Section 32A-4-3; Perkins v. Department of Human Servs., 106 N.M. 651, 748 P.2d 24 (Ct. App. 1987) (holding that dismissals from human services department were in accordance with law where the employees failed to promptly report sexual abuse of a child to

the proper authorities); see also Boudar v. E.G. & G., Inc., 106 N.M. 279, 283, 285, 742 P.2d

491, 495, 497 (1987) (recognizing retaliatory discharge cause of action when plaintiff was

discharged for whistleblowing); Gutierrez v. Sundancer Indian Jewelry, Inc., 117 N.M. 41, 48,

868 P.2d 1266, 1273 (Ct. App. 1993) (recognizing retaliatory discharge cause of action when

plaintiff was discharged for reporting safety violations in workplace); Vigil v. Arzola, 102 N.M.

682, 690, 699 P.2d 613, 621 (Ct. App. 1983) (recognizing retaliatory discharge cause of action

when plaintiff was discharged for reporting misuse of public funds).

Defendants contend that Plaintiff's claim fails because she has not shown a causal

connection between her termination and her reporting of the alleged abuse.  Plaintiff, however,

has presented evidence that Defendant Cohenour was angry with Plaintiff for reporting the alleged

instance of abuse and that this alleged instance of abuse confirmed the concerns of the treatment

team at Taos Group Home when the team recommended against the placement of this child in the

foster care home.  Moreover, there is evidence in the record that the inclusion of documentation

in the child's file of the dispute between Defendant Cohenour and the treatment team was one

reason behind Plaintiff's termination.  Therefore, there is sufficient evidence in the record to

support Plaintiff's retaliatory discharge claim premised on the theory that Plaintiff was terminated

in retaliation for reporting and documenting the alleged instance of sexual abuse by a Treatment

Foster Care client.

### C.    Breach of Contract

The general rule in New Mexico is that an employment relationship may last for an

indefinite time and is terminable at the will of either party unless there is an express contractual

provision stating otherwise.  Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776,

779 (1993).  In other words, either party can terminate an at-will employment relationship for any

or no reason, without liability.  Id.  New Mexico recognizes two exceptions to the at-will

employment doctrine:  an implied contract term that restricts the employer's power to discharge

an employee and retaliatory discharge.  Id.  An implied employment contract restricting an

employer's power to discharge may be found where the employer made direct or indirect

reference that termination would be only for just cause or where the employer has established

procedures for termination that include elements such as a probationary period, warnings for

proscribed conduct, or procedures for employees to air grievances.  Id.

 The New Mexico Supreme Court has upheld a finding of an implied contract based on

employee manuals, words, and conduct of parties.  See Newberry v. Allied Stores, Inc., 108 N.M.

424, 427, 773 P.2d 1231, 1234 (1989).  See also Forrester v. Parker, 93 N.M. 781, 782, 606 P.2d

191, 192 (1980) (employer bound by policies established in "personnel policy guide" when

terminating employee); Kestenbaum v. Pennzoil Co., 108 N.M. 20, 24-26, 766 P.2d 280, 284-86

(1988) (affirming finding of implied contract based on words and conduct of parties).  However,

when an implied employment contract is based on language in a company policy manual, the

manual must be sufficiently specific to change the at-will employment relationship and give rise to

reasonable expectations of the employee.  Hartbarger, 115 N.M. at 672, 857 P.2d at 783;

Kestenbaum, 108 N.M. at 24, 766 P.2d at 284.

 In most cases in which the New Mexico courts have found the existence of an implied

employment contract, there was no disclaimer provision in the employment manual or handbook.

See Kestenbaum, 108 N.M. at 25, 766 P.2d at 285 (employer made oral representations to

plaintiff during initial negotiations that employment would be long term and permanent as long as

plaintiff did his job, and management personnel testified that employer released permanent employees for "good cause"); Newberry, 108 N.M. at 428, 773 P.2d at 1235 (company manual included a section on termination and stated that poor performance could be the cause of termination); Lukoski v. Sandia Indian Management Co., 106 N.M. 664, 666, 748 P.2d 507, 509 (1988) (employee handbook contained established termination procedures, including suspension and warning provisions, and nothing in the handbook alerted an employee against placing reliance on any statement found in the handbook). Nevertheless, the New Mexico courts have declined to give dispositive effect to disclaimers, reasoning that a combination of disclaimers and promissory statements results in a question of fact for the jury. McGinnis v. Honeywell, Inc., 110 N.M. 1, 5-6, 791 P.2d 452, 456-57 (1990); Mealand v. Eastern New Mexico Medical Center, 131 N.M. 65, 70, 33 P.3d 285, 290 (Ct. App. 2001); Kiedrowski v. Citizens Bank, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995).

In McGinnis, the New Mexico Supreme Court upheld a jury's conclusion that the employer breached an implied contract of employment, despite the presence of a disclaimer. 110 N.M. at 5-6, 791 P.2d at 456-57. In affirming the verdict, the New Mexico Supreme Court relied on evidence that showed the employer published a guide specifying certain procedures governing layoffs and that the employer had a policy of taking actions consistent with these termination procedures. Id.

Similarly, in Kiedrowski, the New Mexico Court of Appeals held that a disclaimer did not override other employer representations giving rise to a reasonable expectation of termination only for good cause. 119 N.M. at 575, 893 P.2d at 471. In Kiedrowski, the employer bank had a disclaimer in its handbook that employees can be discharged "at any time and for any reason." Id.

22

Nonetheless, the court of appeals noted that the handbook also contained detailed disciplinary procedures in which progressive discipline was applied, depending on the severity of the problem, in a gradually escalating manner, first with an oral warning, then a written warning, written probation, suspension, and finally, termination.  Id. at 576, 893 P.2d at 472.  There was also evidence that the bank instructed its managers to follow the procedures outlined in the handbook; that plaintiff, herself, followed the procedures in disciplining other employees; and that the bank applied those same procedures to plaintiff by gradually escalating its responses to alleged problems with plaintiff.  Id.  The court held that the bank's systematic application of its detailed termination policies could reasonably create an expectation in plaintiff that the same would be done to her.  Id.  Thus, the court reversed the grant of summary judgment in favor of the employer.  Id. at 577, 893 P.2d at 473.

In Mealand, the New Mexico Court of Appeals again reversed a grant of summary judgment in favor of the employer on a breach of contract claim where the employee handbook set out a detailed, multi-stage system of progressive discipline.  131 N.M. at 70-71, 33 P.3d at 290-91.  The court found that the terms used in the handbook suggested that the progressive discipline policy was more than a set of mere non-binding guidelines.  Id. at 71, 33 P.3d at 291.  Moreover, the court of appeals noted that the handbook gave an extensive list of examples of conduct that might result in disciplinary action or discharge.  Id.  Although the manual stated that the examples were not considered to be all-inclusive, the court of appeals concluded that an employee could "infer from the fact that the examples all related to legitimate business needs that [the employer] would not discipline or discharge an employee for a reason unrelated to a legitimate business need."  Id.  The court also found significant the provision in the handbook

23

that "'[n]o employee will be terminated without prior review from Human Resources.'"  Id.  The

court determined that this promissory statement was sufficient for a jury to conclude that the

provision established a norm of conduct.  Id.  Therefore, the court of appeals held that, despite

qualifying language in the handbook, the overall effect of the handbook created genuine issues of

fact as to whether the plaintiff could be terminated only for misconduct after a prior review by the

human resources department.  Id.

        This case is similar to Kiedrowski and Mealand.  Here, the handbook sets out a detailed,

progressive discipline system, beginning first with warnings, then with probation, suspension, and

finally, dismissal.  See Plaintiff's Personnel Manual at 7-8.[2]  The "Disciplinary Philosophy" section

provides:  "CASA *uses* progressive discipline . . ."; "a supervisor *will not* resort to formal

disciplinary measures *until* informal attempts to correct the problem have failed"; and "The

frequency and/or severity of misconduct *determine* which level of disciplinary action *is required*."

Id. at 7.  (Emphasis added). As the court reasoned in Mealand, the terms "uses", "will not",

"determine", "is required" suggest that the progressive disciplinary procedures are more than just

a set of non-binding guidelines.

---

        [2]Plaintiff and Defendants submitted different personnel manuals to this Court.  Plaintiff
claims that the personnel manual submitted by Defendants, dated July 7, 2002, is not the
governing personnel manual because Plaintiff resumed her full time duties as Clinical Director
before that date.  The Court requested that the parties stipulate as to which is the controlling
personnel manual in this case.  The parties, however, were unable to reach an agreement on this
issue, despite the fact that the relevant provisions in the two manuals are virtually identical.
Because all facts should be construed in the light most favorable to Plaintiff at this point in the
proceedings, for purposes of this motion, this Court will consider the personnel manual submitted
by Plaintiff to be the governing manual in this case.  Nevertheless, even assuming that this Court
used the personnel manual submitted by Defendants, this Court's ruling on the breach of contract
issue would not change.

While the manual provides that progressive discipline is not required for all offenses, the next sentence in the manual states, "CASA reserves the right to dismiss employees for commission of serious infractions, regardless of progressive discipline guidelines or counseling." Id.  A reasonable reading of these provisions is that progressive discipline is used unless the employee commits a serious infraction.  This interpretation is supported by the following provision in the dismissal section:  "Dismissal occurs when other disciplinary action has failed to achieve improvement or when the employee commits a serious offense."  Id. at 8.  Even more compelling is the statement, "Dismissal *shall occur only* on approval of the Executive Director." Id.  (Emphasis added).  As found by the court in Mealand, such a promissory statement is sufficiently explicit to establish a norm of conduct.

The employee handbook in this case contains an extensive list of examples of conduct that may result in discharge.  Id. at 28-29.  Like in Mealand, each of the examples is related to a legitimate business interest of the employer so that an employee might infer that she would not be discharged for a reason unrelated to a legitimate business need.

Moreover, the deposition testimony of Defendant Cohenour supports a finding that an implied contract existed.  In her deposition, Defendant Cohenour stated that Casa de Corazon follows the section in the handbook that provides for progressive discipline, unless there are grounds for immediate dismissal.  Pl.'s Memo. in Opposition to Defts.' Mot. for Summary Judgment, Ex. 7 at 75.  Defendant Cohenour testified that the grounds for immediate dismissal are "spelled out."  Id.  In addition, Defendant Cohenour stated, "[Y]ou can't just decide you are going to terminate somebody without a reason."  Id. at 74.  Although Defendant Cohenour clarified that it was her understanding that, in an at-will employment relationship, an employer

25

does not need reasons before firing an employer, Defendant Cohenour asserted, "In the [Casa] agency no one would terminate – I mean, that would not be acceptable to terminate without having valid reasons." Id. at 74. This testimony indicates that Casa de Corazon follows a policy of progressive discipline, unless there are grounds for immediate dismissal.

In summary, Casa de Corazon published a personnel manual containing detailed statements that could reasonably be understood as imposing substantive and procedural limitations on its right to discharge employees at will. Although the manual contains an express disclaimer that employment is only "at will," the overall effect of the manual, especially in light of Casa de Corazon's self-described policy of only terminating employees when there are valid reasons for their dismissal, creates genuine issues of fact as to whether Plaintiff could only be terminated for a serious offense.

Hence, Defendant's motion for summary judgment as to Plaintiff's breach of an implied employment contract should be denied.

D.      **Breach of the Covenant of Good Faith and Fair Dealing**

Every contract, whether express or implied, imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement. Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990). This covenant requires that neither party do anything that will deprive the other of the benefits of the agreement. Id. New Mexico courts refuse to recognize an implied covenant of good faith and fair dealing to override express provisions in an integrated, written employment contract. Melnick v. State Farm Mut. Auto Ins. Co., 106 N.M. 726, 731 (1988). However, if a plaintiff sufficiently pleads breach of an implied contract, the plaintiff has also sufficiently pled breach of an implied covenant of good faith and

26

fair dealing.  McDonald v. Corrections Corp. of America, 181 F.Supp.2d 1274, 1282 (D.N.M.

2002); Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994).

In this case, since Plaintiff has sufficiently pled a claim for breach of implied contract, Plaintiff has

also sufficiently pled a cause of action for breach of an implied covenant of good faith and fair

dealing.  Therefore, Defendants' motion to dismiss Plaintiff's claim for breach of an implied

covenant of good faith and fair dealing should be denied.

     E.     **Defamation**

     In Count VIII, Plaintiff asserts a claim for defamation based on statements Defendant

Cohenour allegedly made to the staff at Casa de Corazon.  Plaintiff contends that Defendant

Cohenour made the following two defamatory statements to the Casa de Corazon staff:  (1)

Plaintiff was terminated at the recommendation of the state auditors Anna Mayo and Flynn

Sylvest, and (2) Plaintiff was terminated due to inadequate licensing required to run the TFCP.

Pl.'s Memo. in Opposition to Defts.' Mot. for Summary Judgment, Ex. 10 at 1-2.  Plaintiff does

not allege that she suffered any monetary harm.  Rather, Plaintiff only claims injury to her

reputation.

     To establish a cause of action for defamation, a plaintiff must demonstrate that the

defendant published a defamatory communication, to a third person, of an asserted fact, of and

concerning the plaintiff, proximately causing actual injury to the plaintiff.  Clough v. Adventist

Health Systems, Inc., 108 N.M. 801, 806, 780 P.2d 627, 632 (1989).  Although actual injury is

not limited to out-of-pocket loss, damages must be proved and cannot be presumed.  Newberry,

108 N.M. at 429, 773 P.2d at 1236.  Thus, while impairment of reputation is considered a type of

actual harm, the plaintiff must prove damage to her reputation as an element of her defamation

claim.  See Garcia v. Aerotherm Corp., 202 F.3d 281 **6 (10th Cir. 1999) (unpublished

decision).

 In this case, Plaintiff has not demonstrated any actual harm to Plaintiff's reputation in

either Plaintiff's pleadings or briefs.  In fact, Plaintiff's counsel, at the pretrial conference,

admitted that there is no evidence in the record that anyone thought less of Plaintiff as a result of

the alleged defamatory statements.  Bare allegations of harm to Plaintiff's reputation, unsupported

by factual evidence in the record, are not sufficient to prove actual injury to Plaintiff's reputation.

Therefore, Plaintiff's defamation claim should be dismissed.


 IT IS THEREFORE ORDERED that:

1. Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claims

of race discrimination in violation of Title VII and 42 U.S.C. § 1981;

2. Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim

for wrongful termination based on her race and DENIED with respect to Plaintiff's claim for

wrongful termination based on the theory that Plaintiff was terminated in retaliation for reporting

and documenting the alleged instance of sexual abuse by a Treatment Foster Care client;

3. Defendants' motion for summary judgment is DENIED with respect to Plaintiff's claim for

breach of contract;

4.      Defendants' motion for summary judgment is DENIED with respect to Plaintiff's claim for breach of an implied covenant of good faith and fair dealing; and

5.      Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim for defamation.



_____
CHIEF UNITED STATES DISTRICT JUDGE